# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,                    )
                                      )
v.                                    )      Cr. ID No. 1307007770
                                      )
KELSEY LANE,                          )
                                      )
            Defendant.                )

Submitted: February 10, 2014
Decided: March 10, 2014

Daniel G. Simmons, Esquire
Deputy Attorney General
820 N. French Street, 8TH Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Louis B. Ferrara
1716 Wawaset Street
Wilmington, DE 19806
*Attorney for Defendant*

## MEMORANDUM OPINION

**RENNIE, J.**

Defendant Kelsey Lane ("Lane") was arrested on July 10, 2013, and charged with Driving Under the Influence of Alcohol or with a Prohibited Alcohol Content; Failure to Remain within a Single Lane, and; Failure to Obey a Traffic Control Device on a One-way Roadway. On December 4, 2013, Lane noticed the present Motion to Suppress.

A hearing on the motion was held on January 7, 2014. At the hearing, the Court heard testimony from two witnesses. The Court reserved decision and ordered supplemental briefing from the parties on the issues of (1) whether the defendant was under arrest when she was placed in the rear of a self-locking police vehicle for approximately ten (10) minutes; and (2) if the defendant was detained rather than arrested, then was she legally detained pursuant to 11 *Del. C.* § 1902 or otherwise. This is the decision of the Court on Lane's Motion to Suppress.

## FACTS

At the hearing, Amanda Yeaton ("Yeaton") testified as the State's first witness. Yeaton testified that she accompanied her friend, Lane, to a restaurant in Trolley Square on July 9, 2013, to celebrate Lane's birthday with friends. Yeaton testified that while at the restaurant, she "believe[d]" that Lane had a beer with dinner. After dinner, the group went to another location where Lane consumed a margarita. Yeaton "believe[d]" that Lane consumed one shot of alcohol as well.

When Lane and Yeaton departed, Yeaton volunteered to drive because she felt Lane had consumed more alcohol than her. However, Lane proceeded to drive Yeaton home. Although she paid attention to Lane's driving initially, Yeaton did not notice anything wrong with the way Lane was driving and eventually stopped paying attention. While driving along Murphy Road towards Faulk Road, the vehicle collided with two road signs.

2

Yeaton testified that the windshield was cracked, but it appeared that neither she nor Lane were injured. Soon after the accident they were approached by a police officer. Yeaton testified that the officer asked them basic information such as their names, who they were and what they were doing.[1] Yeaton further testified that the officer asked her if Lane had been drinking, to which Yeaton responded affirmatively.

The second witness to testify for the State was Senior Sergeant Keith Sparks ("Sergeant Sparks"). Sergeant Sparks testified that he has worked for the New Castle County Police for thirty (30) years. On the night of July 9, 2013, Sergeant Sparks was assigned to uniform patrol. He was on Wilson Road approaching Faulk Road when he saw what appeared to be a cloud of smoke.

Sergeant Sparks stopped to investigate and he determined that there had been a one-vehicle accident, and that the vehicle was resting in a mulch bed off the road. Sergeant Sparks also observed two traffic signs dislodged and a considerable amount of debris in the roadway. He called into the dispatch center to let them know he was at the scene of an accident and there appeared to be potential injuries.

Sergeant Sparks approached the vehicle to ask about injuries. The passenger, Yeaton, stated "I told her not to drive, she was too drunk." Sergeant Sparks approached the driver side of the vehicle and detected a strong odor of alcohol coming from the car. He also smelled a strong odor of alcohol on Lane's breath. He asked the driver, Lane, to step out of her vehicle and go into the back of his police car for her own safety because of the extensive damage to the vehicle

---

[1] Sergeant Sparks testified that he did not recall asking the occupants any questions. However, based on Yeaton's credible testimony, the Court is not troubled by the officer's lack of recollection on this specific issue because as the non-primary investigating officer, he did not fill out a report, and the incident had occurred seven months prior to his testimony.

3

and because steam was coming from her car.[2]  Sergeant Sparks testified that because Lane was intoxicated and there was debris in the roadway, he did not want to take the chance that she would wander around the accident scene. He also knew that an officer from the Delaware State Police would be responding to assume the investigation.

Lane complied with Sergeant Sparks' request and sat in the back of his self-locking police vehicle, without handcuffs, until Delaware State Police arrived.  Sergeant Sparks testified that he believed Lane was in the back of his police car for less than ten minutes.

### a.  Parties' Positions

It is Lane's position that an arrest occurred when she was placed in the rear of Sergeant Sparks' self-locking police vehicle.  Lane further argues that even if the encounter did not constitute an arrest, it can only otherwise be classified as an 11 *Del. C.* § 1902 detention.  Lane contends that the officer did not comply with the express criteria of § 1902(a) requiring specific questioning and, therefore, Lane could not have been legally detained pursuant to the statute.

The State contends that Lane was not under arrest; rather, she was subjected to a lawful investigatory detention.  The State argues that Sergeant Sparks had reasonable articulable suspicion to believe Lane was driving under the influence of alcohol, and thus, his less than 10

---

[2] Sergeant Sparks testified that in an effort to separate Lane and Yeaton, he instructed Lane to go into the rear of the police car and instructed Yeaton to stand in the vicinity of the damaged vehicle.  Counsel for Lane challenges the credibility of the officer's concern for Lane's safety because he instructed Yeaton to stand by the potentially dangerous car.  While the Court does not view that directive as the most prudent, it will not discredit the officer's intent.  Sergeant Sparks testified that he secured Lane because she appeared intoxicated and he did not want to take the chance of Lane wandering around the accident scene.  Sergeant Sparks testified that he placed Lane in his vehicle instead of her own out of concern for a potential fire in her vehicle.  Sergeant Sparks and Yeaton both testified that Yeaton waited *by* Lane's car; not inside of it.  Yeaton's proximity to the vehicle was not established, and Sergeant Sparks testified that, based on thirty years of experience, he knows where to place an individual to avoid potential injury from a vehicular fire.

4

minute detention of Lane for her own safety pending arrival of the Delaware State Police was a valid detention.

## DISCUSSION

On a motion to suppress, the State bears the burden of proving, by a preponderance of the evidence, that a search or seizure did not violate the constitutional rights of the defendant.[3] The Fourth Amendment of the United States Constitution and Article I, Section 6 of the Delaware Constitution afford individuals protection from "unreasonable" seizures.[4] Under the Fourth Amendment, a person is considered "seized" when, in view of the circumstances, a reasonable person would not feel free to leave.[5]

The distinction between an investigatory detention, which requires a basis of reasonable articulable suspicion, and a custodial arrest, which requires a basis of probable cause, was addressed by the Superior Court in *State v. Kang.*[6] The *Kang* court considered a number of factors in determining whether a seizure is an investigatory detention or a custodial arrest:

> In order to determine whether a seizure is an investigatory detention or an arrest, the Court must examine "the reasonableness of the level of intrusion under the totality of the circumstances." The following considerations are pertinent to the analysis: (1) the amount of force used by the police; (2) the need for such force; (3) the extent to which the individual's freedom of movement was restrained; (4) the physical treatment of the individual, including whether handcuffs were used; (5) the number of agents involved; (6) the duration of the stop; and (7) whether the target of the stop was suspected of being armed.[7]

Notably, in *Kang*, the defendant challenged, in part, his detention in the rear of a police car, during which time he made several incriminating statements. Notwithstanding the detention

---

[3] *State v. Flonnery*, 2013 WL 3327526, at *3 (Del. Super. June 12, 2013) (citation omitted).
[4] *See Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990).
[5] *State v. Huntley*, 777 A.2d 249, 254 (Del. 2000) (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).
[6] 2001 WL 1729126
[7] *Id.* at *6.

in the rear of a police vehicle, the Court found "to the extent placing Mr. Kang in the police cruiser increased 'the level of intrusion' effected by the detention, the intrusion still did not rise to the level of a custodial arrest."[8]

Applying the *Kang* factors, this Court finds that the minimal intrusion upon Lane was an investigatory detention rather than a custodial arrest. Lane was instructed to sit in the back of Sergeant Sparks' vehicle, and she complied. Sergeant Sparks testified that his purpose for placing Lane in the police car was twofold: to preserve Lane's safety and to prevent Lane and Yeaton from communicating. There were two individuals at the scene that needed to be investigated and Sergeant Sparks was the only officer present. Lane's freedom of movement was restrained for roughly ten minutes and she was not handcuffed. When the lead investigating officer arrived roughly ten minutes after Lane was detained, Lane was released from the police car. Under the totality of those circumstances, the Court finds that Lane's detention was investigatory and not custodial.

The Court next considers whether the detention was supported by reasonable articulable suspicion. For an investigatory detention to be lawful, it must be supported by reasonable articulable suspicion of criminal activity.[9] The Delaware Supreme Court has defined reasonable articulable suspicion as an "officer's ability to 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.'"[10] "Reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar

---

[8] *Id.* at *7.
[9] *See Id.*
[10] *Jones v. State*, 745 A.2d 856, at 861 (Del. 1999) (quoting *Coleman v. State*, 562 A.2d 1171, 1174 (Del. Super. 1989))

6

circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[11]

The Court is satisfied that, under the totality of the circumstances, Sergeant Sparks had the requisite reasonable suspicion to detain Lane. Sergeant Sparks testified that he came upon a one-vehicle accident, where the vehicle had plowed over two road signs located in the road median before coming to rest in a mulch pile. He further testified that he smelled an odor of alcohol on Lane's person and, importantly, Yeaton stated that she told Lane "not to drive, she was too drunk." The testimony presented establishes that Sergeant Sparks objectively had reasonable articulable suspicion to believe that Lane was driving under the influence of alcohol and thus, his detention was valid.

Lane challenges the validity of the detention on the basis that Sergeant Sparks did not ask her the specified questions outlined in 11 *Del. C.* § 1902(a).[12] Lane argues that § 1902 detentions are lawful only where the express criteria of § 1902 is met, including asking the "requisite questions to satisfy the statute."[13] However, the testimony in the record by Yeaton is that Sergeant Sparks approached the damaged vehicle and asked both women their names, what they had been doing and whether they had been drinking. It was after Yeaton made the statement that implicated Lane, that Sergeant Sparks temporarily detained Lane while awaiting the lead investigating officer and while he secured the crime scene.

In addition, the Delaware Supreme Court in *Buckingham v. State,* rejected an argument that evidence should be suppressed because of the failure of the police to follow the strict

---

[11] *Id.* (citing *United States v. Cortez,* 449 U.S. 411, 417–18 (1981)).

[12] 11 *Del. C.* § 1902(a) reads: "[a] peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination."

[13] Defendant's Brief at 3. Lane cites *State v. Bowden,* 273 A.2d 481, 484 (Del. 1971) in support of her position.

questioning requirements of § 1902, e.g. his name, address, business abroad and where he is going.[14] Importantly, the Court noted that the statutory language of § 1902(a) utilizes the permissive term *may* as opposed to the mandatory term *shall* in regards to questioning of detained suspects.[15] Accordingly, the fact that Sergeant Sparks did not ask Lane the specific questions set forth in § 1902 does not render the investigatory detention of Lane unlawful under the circumstances present in this case.

## CONCLUSION

For the foregoing reasons, this portion of the Defendant's Motion to Suppress is **DENIED**. The matter will be set for the remainder of the suppression hearing and/or trial before this judicial officer.

**IT IS SO ORDERED this 10th day of March, 2014.**

The Honorable Sheldon K. Rennie
Judge

---

[14] 482 A.2d.327, 333 (Del. 1984).
[15] *Id.*