**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID. No. 1403018567 |
| | ) | |
| DEON B. BLACK. | ) | |
| | ) | |

## ORDER

On this 6th day of October, 2014, **IT IS ORDERED** as follows:

Defendant's Motion to Suppress is **DENIED**.

Cynthia L. Faraone, Esq., Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for State of Delaware.

Joseph M. Leager, Esq., Assistant Public Defender, Public Defender's Office, Wilmington, Delaware. Attorney for Defendant.

**Scott, J.**

1

## Introduction

Before the Court is Defendant Deon Black's ("Defendant") Motion to Suppress, brought by counsel. Defendant argues that there was no reasonable suspicion for a pat down. Defendant also argues that the evidence found on his person should be suppressed because the search incident to arrest was invalid, as it was a result of an improper pre-textual stop that exceeded the scope of a traffic stop. The Court has reviewed the motion and the State's response and held a suppression hearing. For the following reasons, the Defendant's motion is **DENIED.**

## Findings of Fact

On March 25, 2014, at around 9:00p.m., Detective Leary and Probation Officer Sweeney were on preventive patrol in the area of 8th and North Monroe Street when they observed a Jeep parked on the corner. As the vehicle began to travel, the driver failed to use a turned signal on two occasions. Detective Leary also observed the driver failed to come to a complete stop at a stop sign. Upon observing the traffic violations, Detective Leary activated the emergency equipment in his police vehicle to conduct a motor vehicle stop. The Jeep continued for a short distance before coming to a complete stop. Prior to the Jeep stopping, Detective Leary observed the vehicle passenger, Defendant Deon Black ("Defendant Black"), moving around in the vehicle and turning toward the center console.

2

Detective Leary approached the vehicle and made contact with the driver, Matthew Norwood ("Norwood"). Detective Leary asked Norwood for his license, registration and proof of insurance. The vehicle was registered to Norwood, but Norwood was unable to provide a license or insurance card. Detective Leary returned to his police vehicle to check Norwood's information and prepare a summons for multiple traffic violations. Detective Leary then asked Norwood to step out of the vehicle so that he could explain the summons and have Norwood sign it. Prior to having Norwood sign the summons, Detective Leary asked Norwood general questions about who he was with in the vehicle and where they were heading. Norwood told Detective Leary that he was giving his buddy – Defendant Black – a ride to Newark to see his kids. Norwood said he didn't know his buddy's name, but that he had met him in AA. Detective Leary also asked Norwood whether he had anything illegal in the car or on his person. Norwood responded that he did not and volunteered his consent for Detective Leary to search the vehicle. Prior to searching the vehicle, Detective Leary frisked Defendant Black. A cell phone and money were found on Defendant Black's person. These items were returned to Defendant Black after the pat down.

After the pat down of Defendant Black, Detective Leary searched the vehicle. During his search, Detective Leary found several chunks of an off-white chunky substance on the driver's side floor board, two pipes near the driver's seat and door, and a blue digital scale in the center console. Both Norwood and

3

Defendant Black were placed under arrest and transported to the City of Wilmington Police Department for further investigation.

Once at Wilmington Police Department, both Norwood and Defendant Black were also searched incident to arrest. Nothing was found on Norwood. A search of Defendant Black's person revealed several chunks of suspected crack cocaine in the front pouch of Defendant Black's hoodie. There was also $147 cash found in Defendant Black's pants' pocket, though Defendant Black said that it was only $100. Pursuant to filling out the defendant history form at intake, Detective Leary learned that Defendant Black was unemployed at that time. Defendant Black chose not to offer information as to how or why he was in possession of the money.

Defendant Black was subsequently indicted on charges of Drug Dealing and Possession of Drug Paraphernalia. On July 30, 2014, Defendant Black filed a Motion to Suppress Evidence.

### Discussion

I. ***Defendant has no standing to challenge the search of the vehicle because he was the passenger.***

A person only has standing to challenge evidence seized as a result of a violation of one's own constitutional rights.[1] The petitioner must demonstrate his own "legitimate expectation of privacy in the invaded place" before he may

---

[1] *Mills v. State*, 2006 WL 1027202 (Del. Super. Apr. 17, 2006).

4

challenge the validity of a search or seizure.[2]  For purposes of protection under the Fourth Amendment, automobiles are treated differently than houses.[3]  A passenger who does not own or exercise control over a vehicle does not possess a reasonable expectation of privacy in the vehicle in which he is traveling.[4]  Therefore, a mere passenger in a vehicle does not have standing to challenge a search.[5]

With respect to the evidence discovered as a result of the vehicle search, Defendant Black lacks standing to seek suppression of the evidence.  Here, the vehicle was driven by and registered to Norwood.  The search of the vehicle was conducted because of Norwood's offer and consent.  There is no evidence that Defendant Black owned the vehicle or exercised control over it.  Defendant Black, as a passenger in the vehicle, had no reasonable expectation of privacy inside the vehicle, where the crack cocaine substance and drug paraphernalia were found.[4]  "Absent other factors that are not present here, any reasonable expectation of privacy in the car belongs to its owner or driver, but not a mere passenger."[6]  Accordingly, Defendant Black has no standing to suppress evidence obtained from the search of Norwood's vehicle.

---

[2] *Wilson v. State*, 812 A.2d 225 (Del. 2002) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).
[3] *Rakas*, 439 U.S. 128.
[4] *See Mills*, 2006 WL 1027202; *see Rakas*, 439 U.S. 128.
[5] *Id.*
[6] *Mills*, 2006 WL 1027202.

**II.** *The evidence will not be suppressed because it was found as a result of a valid traffic stop, consensual vehicle search and valid search incident to arrest.*

Police officers may stop an individual for investigatory purposes if they have a reasonable articulable suspicion that the person is committing, has committed, or is about to commit a crime.[7] To demonstrate reasonable suspicion, the officer must be able "to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrants the intrusion."[8] In determining whether reasonable articulable suspicion exists, the Court "must examine the totality of the circumstances surrounding the situation as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[9]

A police officer that observes a traffic violation has probable cause to stop the vehicle and its driver.[10] The scope and duration of the detention must be reasonably related to the initial justification for the traffic stop.[11] A police officer may not conduct a pat down search of a person during a traffic

---

[7] 11 *Del. C.* § 1902; *see also State v. Henderson,* 892 A.2d 1061, 1064 (Del.2006) (citing *Terry v. Ohio,* 392 U.S. 1, 30 (1968)).
[8] *Henderson,* 892 A.2d at 1064-65.
[9] *Jones v. State,* 745 A.2d 856, 861 (Del. 1999) (citing *United States v. Cortez,* 449 U.S. 411, 417–18 (1981)).
[10] *Whren v. United States,* 517 U.S. 806, 810 (1996).
[11] *Caldwell v. State,* 780 A.2d 1037, 1046 (Del. 2001).

6

stop unless the officer has reasonable suspicion that the person subject to the frisk is armed and dangerous.[12] This reasonable suspicion standard is the same standard that is applied to a pedestrian reasonably suspected of criminal activity under *Terry v. Ohio*.[13]

a. *Valid Traffic Stop*

"Under the Fourth Amendment, a traffic stop is reasonable if it is supported by reasonable suspicion or probable cause to believe that a traffic violation has occurred."[14] The subjective intent of the officer at the time of the stop does not affect this standard.[15] In other words, the constitutional reasonableness of the traffic stop does not depend on the actual motivations of the individual officer involved because subjective intentions play no role in ordinary probable cause analysis under the Fourth Amendment.[16] "Therefore, as long as the officer is making the traffic stop based on a violation of the traffic code that he has observed, any pretextual reason or actual motivations that might also be involved in the officer's actions are irrelevant."[17]

The only support that Defendant Black offers for his argument that the traffic stop was invalid because it was purely pretextual is the reasoning in *State v.*

---

[12] *Arizona v. Johnson,* 555 U.S. 323 (2009).
[13] *Terry*, 392 U.S. at 30.
[14] *State v. Rickards*, 2 A.3d 147, 151 (Del. Super. 2010), *aff'd* 30 A.3d 782 (Del. 2011) (citations omitted).
[15] *Rickards*, 2 A.3d at 151 (Del. Super. 2010).
[16] *Id.*
[17] *Id.* at 151-152.

7

*Heath*.[18] To determine the validity of a pretextual stop under the Delaware Constitution the *Heath* court developed a three-part, burden-shifting test.[19] The test requires first that the State show that there was probable cause or reasonable suspicion of a traffic violation such that a reasonable officer could have made the stop.[20] "If the court finds that there was not probable cause or reasonable suspicion, the analysis ends because the stop was unreasonable regardless of any underlying motivation."[21] However, if probable cause or reasonable suspicion for the stop is found, the burden shifts to the defendant to show that an unrelated purpose motivated the stop and that absent such a purpose the stop would not have been made.[22] Pretextualism is presumed if this burden is met.[23] The State then has the opportunity in rebuttal to demonstrate that a non-pretextual rationale existed for the stop.[24] In evaluating the State's rebuttal, the court should consider the officer's subjective intent as well as objective factors relating to reasonable suspicion of an underlying criminal offense.[25]

The Court rejects Defendant Black's argument that the traffic stop was purely pretextual. Moreover, this Court -- along with other Superior Court decisions -- declines to follow the decision in *Heath*. The initial stop of

---

[18] Def. Mot. to Suppress.
[19] *State v. Heath*, 929 A.2d 390 (Del. Super. 2006); *see Rickards*, 2 A.3d at 151.
[20] *Id.*
[21] *Rickards*, 2 A.3d at 151.
[22] *Heath*, 929 A.2d 390.
[23] *Id.*
[24] *Id.*
[25] *Id.*

Norwood's vehicle was reasonable and not purely pretextual. Detective Leary observed Norwood fail to use a turn signal twice and fail to come to a complete stop at a stop sign, in violation of Delaware law. Upon witnessing these traffic violations, Detective Leary had both reasonable suspicion and probable cause to stop Norwood's vehicle. For these same reasons, the traffic stop was not purely pretextual. Accordingly, Defendant Black's argument fails and the Court finds that the traffic stop was valid.

### b. The Search of the Vehicle was Consensual

As a general rule under the Fourth Amendment, a search requires a warrant and probable cause. However, "it is well settled that a search conducted pursuant to a valid consent is an exception to the requirements of a warrant and probable cause."[26]

Here, Norwood consented to a search of the vehicle during the course of a legal detention. While explaining the summons to Norwood, Detective Leary asked Norwood some routine questions.[27] Detective Leary asked Norwood if he had anything on his person or in the vehicle. Norwood responded, "no, feel free to check."[28] This is valid consent for the officers to search the vehicle because it was given voluntarily, within minutes of the

---

[26] *State v. Huntley*, 777 A.2d 249, 257 (Del. Super. 2000) (citations omitted).

[27] "During a valid investigatory stop, an officer 'may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicion. But the detainee is not obliged to respond.'" *Mills*, 2006 WL 1027202.

[28] Detective Leary's testimony at Suppression Hearing.

initial stop and during the course of Norwood's discussion with Detective Leary regarding the traffic stop and the summons issued. For these reasons, the officers did not exceed the scope and duration of the traffic stop with further interrogation and searches. The Court finds that Detective Leary obtained a valid consent to search the vehicle from Norwood, the vehicles owner and operator, during the ordinary scope and duration of the original traffic stop. Accordingly, the search of the vehicle was valid because it was conducted pursuant to the valid consent of the owner and operator of the vehicle.

### c. Valid Pat-Down

A frisk of an individual is justified when "a reasonably prudent man in the circumstances could be warranted in the belief that his safety or that of others was in danger."[29] The "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[30] "[D]ue weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."[31] The Court must examine the totality of the circumstances "as viewed through the eyes of a reasonable, trained

---

[29] *State v. Burton*, 2013 WL 4852342, at *3 (Del. Super. Jun. 3, 2013) (citing *Holden v. State*, 23 A.3d 843, 850 (Del. 2011)).
[30] *Terry*, 392 U.S. at 27.
[31] *Id.*

police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[32]

In this case, the pat down of Defendant Black was reasonable in light of the totality of the circumstances. Defendant Black was only removed from the vehicle in order to conduct the search of the vehicle. The officers properly conducted a pat down for officer safety after Defendant Black was removed from the vehicle and prior to conducting the search of the vehicle. Detective Leary testified that before stopping the vehicle, he observed the passenger, Defendant Black, turn toward the center console. Detective Leary also testified that the location were the vehicle was stopped was a high crime area. Moreover, when asked to exit the vehicle, Defendant Black was not restrained in handcuffs or in the squad car. Detective Leary wanted to make sure that Defendant Black did not have any weapons on his person before turning his back to Defendant Black to conduct the vehicle search. For these reasons and together with Detective Leary's field experience, the pat down of Defendant Black for officer safety prior to conducting the vehicle search was reasonable and valid.

Furthermore, the only items found on Defendant Black as a result of the pat down were the cash and a cell phone. Detective Leary testified that these items were returned to Defendant Black and the vehicle search was conducted. The additional crack cocaine was not found on Defendant

---

[32] *Burton*, 2013 WL 4852342, at *3 (citing *Jones*, 745 A.2d at 861).

11

Black's person until the search incident to arrest that was conducted at Wilmington Police Department. The cash and cell phone were also only seized as part of that valid search incident to arrest after the drugs and drug paraphernalia were found as a result of the consensual vehicle search.

### d. Valid Search Incident to Arrest

A search can be justified as a search incident to an arrest, but only if the arrest, or seizure, was lawful.[33] Reasonable suspicion supports only a limited search and seizure. The police must have probable cause to justify an arrest.[34]

Detective Leary had probable cause to arrest Defendant Black and Norwood because of the crack cocaine and drug paraphernalia found in the vehicle as a result of the consensual search. The discovery of these items in the vehicle in which Defendant Black was a passenger as well as the cash found on Defendant Black's person provided Detective Leary probable cause to arrest Defendant Black. Moreover, Detective Leary knew from his knowledge and experience as an officer that drug dealers will also accept transportation as payment for drugs. The fact that both Norwood and Defendant Black had told the officers that Norwood was giving Defendant Black a ride also added to the probable cause that Detective Leary had to arrest Defendant Black after the vehicle search. For these reasons, Defendant Black was properly arrested based on sufficient probable cause. Accordingly, the

---

[33] *United States v. Edwards,* 415 U.S. 800, 802 (1974).
[34] *See* 11 *Del. C.* § 1904(b)(1); *Thompson v. State,* 539 A.2d 1052 (Del. Super. 1988).

cell phone, cash, and crack cocaine substance found on Defendant Black's person at Wilmington Police Department as a result of a valid search incident to arrest are not suppressed.

**III.** ***Any reference to alleged omissions by Defendant Black regarding the money found on his person is suppressed.***

It does not appear to the Court that Defendant Black made any statements at Wilmington Police Department that could be suppressed. However, the Court finds that Defendant Black did not affirmatively fail to explain how or why he was in possession of the cash found on his person at Wilmington Police Department. In fact, Defendant Black chose to remain silent and did not offer any information regarding how or why he was in possession of the cash. The only information Defendant Black offered regarding the cash was that it totaled $100. Therefore, any reference that the State has made or plans to make at trial regarding how Defendant Black "could not explain how he got the money" is suppressed.[35]

## Conclusion

For the aforementioned reasons, Defendant's Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

*/s/Calvin L. Scott*
**Judge Calvin L. Scott, Jr.**

---

[35] State's Response at 2.