SUPERIOR COURT
OF THE
STATE OF DELAWARE

CRAIG A. KARSNITZ
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

February 25, 2019

Stephanie A. Tsantes, Esquire
Office of Defense Services
14 The Circle. 2nd Floor
Georgetown, DE 19947

Derek G. Gay, Esquire
Department of Justice
114 East Market Street
Georgetown, DE 19947

RE:   ***State v. Stephens***
       Def ID: 1808008764
       CRA #S18-09-0121 - 0127

Dear Counsel:

Pending before the Court is Defendant's Motion to Suppress. For the following reasons, the Motion is GRANTED.

## I. FACTS

Defendant Robin Stephens has been charged by the State of Delaware ("State") in a seven count indictment with, *inter alia*, criminal impersonation and drug dealing. The charges originated from a traffic stop by Delaware State Police officers who are a part of the Governor's Task Force. The stop occurred in the early morning hours of August 14, 2018, on a country road outside of Millsboro, Delaware.

Defendant was riding in a vehicle operated by Francisco Sandoval. While patrolling in an unmarked police vehicle Corporal Leonard DeMato of the Delaware State Police

observed Mr. Sandoval fail to stop at a stop sign as he traveled westbound on Mount Joy Road, through its intersection, and turned south on to Hollyville Road. Corporal DeMato followed Mr. Sandoval and, shortly after leaving the intersection, activated his lights to signal Mr. Sandoval to stop. Mr. Sandoval complied. Corporal DeMato first notified fellow officers Detective Wallace and Detection Ralston of the stop, then approached Mr. Sandoval's vehicle on the passenger side. Corporal DeMato asked Mr. Sandoval for his license, registration and insurance card and, while Mr. Sandoval was retrieving his papers, Corporal DeMato asked the occupants of the vehicle, which included Defendant and a rearseated female occupant, what their business abroad was that morning. Defendant responded they were traveling to aid a friend who was stranded. According to Corporal DeMato, Defendant appeared "incredibly nervous", as evidenced by Defendant's rapid breathing and repeated attempts to show the officer his cell phone text messages while also talking to someone on the phone. It appeared that Defendant was trying to substantiate his claim that a friend was stranded by showing Corporal DeMato text messages. Corporal DeMato also testified Defendant had a "...complete unwillingness to make eye contact...".

Corporal DeMato then asked both passengers for identification and each responded that they had none. He asked Defendant his name and, according to Corporal DeMato, Defendant's level of nervousness "visibly escalated", but he identified himself as Dion Stephens. Corporal DeMato then asked Defendant his birth date. After a pause, Defendant answered, "1978", then paused again before adding "12-16". Corporal DeMato thought and testified at the suppression hearing that the way Defendant answered the question about his birth date was unusual and suspicious. Corporal DeMato then asked Defendant his Social Security number and Defendant said he did not know it. Corporal DeMato asked him for the last four digits of his Social Security number and Defendant repeated the same answer.

While Corporal DeMato did not know it at the time, Defendant gave a false name and date of birth.

After Defendant failed to provide his Social Security number, Corporal DeMato asked Defendant to step out of the vehicle. Defendant complied. Corporal DeMato made the decision to handcuff Defendant and, after a short period in which Defendant had difficulty understanding what Corporal DeMato wanted him to do, Defendant turned away from Corporal DeMato who then applied the handcuffs. Corporal DeMato took this step because of the "...unusually high level of nervous behavior", and because DeMato suspected Defendant had fabricated answers to his questions.

Then things got really interesting. Corporal DeMato walked Defendant towards his police vehicle, intending to search him prior to placing hin inside the vehicle, "...for an arrest for criminal impersonation...". In the process, he saw Defendant clutching something in his right hand. Corporal DeMato tried to pry Defendant's fingers apart and, while doing so, Defendant broke loose from control and ran to a nearby field. Corporal DeMato took up the chase, tackled Defendant in short order, and took him back to his vehicle.

Detective Wallace searched in the field and located a ball cap which had fallen from Defendant's head. Near the cap Detective Wallace found two plastic baggies which, it was ultimately determined, contained cocaine.

But the events of the evening were not yet finished. While Corporal DeMato and Detective Wallace were occupied by the Defendant, Detective Ralston approached the operator of the vehicle Mr. Sandoval, and told Mr. Sandoval he was being detained for investigation. Detective Ralston asked Mr. Sandoval if he was in possession of anything illegal. Mr. Sandoval eventually admitted he had two baggies of heroin. Detective Ralston found three bags of what

was determined to be heroin in Mr. Sandoval's pants pocket. A search of the vehicle produced a glass smoking pipe found in the trunk, and another plastic bag with white powder[1] found on the floor in the front passenger area where Defendant had been sitting.

Defendant filed a Motion to Suppress the evidence found in the field as being the end result of an unlawful detention. An evidentiary hearing was held on February 19, 2019, at which Corporal DeMato was the only witness. The facts as I described them come from his testimony which was succinct and credible or his affidavit of probable cause.[2]

Defense counsel conceded at the hearing that the only evidence for which suppression was sought was the drugs found in the field. For the reasons expressed in this letter, I am of the opinion that Corporal DeMato did not have a reasonable suspicion to detain Defendant when he handcuffed him, and he did not at that time have probable cause to arrest him for criminal impersonation or any other charge. As a result I am granting the Motion to Suppress solely as to the drugs found in the field.

## II. DISCUSSION

### A. Burden of Proof

On a Motion to Suppress the Defendant bears the burden to prove by a preponderance of evidence that the challenged search or seizure violated Fourth Amendment principles.[3] However, once the Defendant has established a basis for his motion, i.e., the search or seizure was conducted without a warrant, the burden shifts to the State to show by a

---

[1]This powder was field tested and did not test as cocaine.

[2]The defense made a point that Corporal DeMato's vehicle did not have a video recording device. In my view a video was unnecessary as the facts are not in dispute.

[3]*State v. Huntley*, 777 A.2d 249 (Del. Super. 2000).

preponderance of evidence the search or seizure was reasonable.[4]

## B. Uncontroverted Legal Principles

A few other principles are black letter law. The seizure of a vehicle and its occupants based upon an observed traffic violation is a "seizure" within the meaning of the Fourth Amendment.[5] The detention must be limited in scope and duration,[6] and reasonably related in scope to the circumstances which justified the stop.[7] Any investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion.[8] The police must have reasonable and articulable suspicion based upon specific and articulable facts, which taken as a whole with any rational inferences, reasonably warrant the intrusion.[9] Section 1902(a) of Title 11 provides:

> A peace officer may stop any person abroad, or in a
> public place, who the officer has reasonable ground to
> suspect is committing, has committed or is about to
> commit a crime, and may demand the person's name,
> address, business abroad and destination.

Of course, the key to §1902 is the "reasonable ground to suspect". A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining

---

[4]*State v. Dillard*, 2018 WL 1382394 (Del. Super. Ct. Mar. 16, 2018).

[5]*Caldwell v. State*, 780 A.2d 1037, 1045 (Del. 2001).

[6]*Terry v. Ohio*, 392 U.S. 1 (1983).

[7]*Id.*, at 20.

[8]*Caldwell*, 780 A.2d at 1046-1050.

[9]*Jones v. State*, 745 A.2d 856, 861 (Del. 1999).

objective facts with the officer's interpretation of those facts.[10] The Court is required to judge the facts under an objective standard, and a police officer's subjective opinion that suspicious circumstances are ongoing is insufficient.[11]

### C. Case Law

Not surprisingly, a number of Delaware cases have wrestled with these issues. In *State v. Moore*,[12] the court suppressed evidence obtained in a stop of a vehicle and subsequent arrest of a passenger of the vehicle who gave a name which turned out to be false, and was unable to produce identification. The officer then handcuffed the occupant (Moore), patted him down, and, during the process, the occupant tried to reach into his pants pocket. The officer then transported Moore to the police station where Moore admitted giving the officer a false name. Moore was arrested for criminal impersonation and placed in a cell. Moore was searched and money and drugs were found.

The court found the initial detention a violation of the Fourth Amendment and §1902 and, therefore, the arrest and search were unauthorized. The court suppressed the evidence found at the police station.

In a case that has striking similarities to the case at issue, our Supreme Court affirmed a conviction and denial of suppression of evidence. *Stafford v. State*[13] involved a stop of a vehicle for illegally tinted windows. A passenger (Stafford) in the car claimed to have no identification and gave the officer a name and address which at the scene the officer determined

---

[10] *Id.*

[11] *Harris v. State*, 806 A.2d 119 (Del. 2002).

[12] 2001 WL 1198682 (Del. Super. Ct. Aug. 23, 2001).

[13] 59 A.3d 1223 (Del. 2012).

to be false. After Stafford gave the name and address the officer ran a check of both on his computer, including different combinations and alternative spellings with no result. The officer also testified he had made between 50 and 100 arrests for criminal impersonations. These facts combined with the officer's experience gave him reasonable grounds to believe Stafford had committed the crime of criminal impersonation, justifying his arrest and subsequent search which revealed a gun.

Of course the difference between this case and Stafford is Corporal DeMato did not take the step of searching his computer for the name given by Defendant. Corporal DeMato decided to handcuff and arrest Defendant because of Defendant's "seemingly fabricated answers" and his high level of nervousness.

A few other cases deserve mention. In *Holden v. State*,[14] the Delaware Supreme Court suppressed a gun discovered during a frisk of a passenger because the officers had no reason to suspect the Defendant was armed. The stop was for a fictitious license plate and the officers had no other justification for the frisk of the passenger.

In *State v. Miliany-Ojeda*,[15] the court suppressed evidence found in the search of the trunk of a vehicle stopped for a speeding violation. The State sought to justify the search because the Defendant was shaking uncontrollably and gave inconsistent and incomplete answers to the officer's questions. The court wrote that it "believes that a person of reasonable caution would not be warranted in believing that ... a nervous demeanor and conflicting [answers] reasonably indicates that the defendant [] had committed a crime."[16]

---

[14] 23 A. 3d 843 (Del. 2011).

[15] 2004 WL 343965, (Del. Super. Ct. Feb. 18, 2004).

[16] Id., at *6 (*quoting Huntley*, 777 A.2d at 257).

For further discussion of these issues see also *Loper v. State*,[17]*Brown v. State*,[18]and

*Delvalle v. State*.[19]

### D. Application of the Law to the Facts of this Case

In light of Corporal DeMato's observation that Mr. Sandoval committed a traffic violation, he had every right to stop the vehicle in which Defendant was riding. He also was free to ask Defendant for identification, and to even step outside the car.[20] In my view, however, the handcuffing and arrest of Defendant for criminal impersonation was without reasonable cause and thus unauthorized.

At the evidentiary hearing, I asked Corporal DeMato to tell me why he believed he had a reasonable suspicion that Defendant had committed the crime of criminal impersonation which he believed justified his actions. He listed the following facts:

1.   Defendant had no identification.
2.   Defendant was very nervous and breathing rapidly.
3.   Defendant was talking on his cell phone and at the same time trying to show the officer a text message (which purportedly supported his claim for what his "business abroad" was).
4.   He gave his birth date in an unusual and strange fashion.
5.   He claimed to not know his Social Security number, or even the last four digits.

In my opinion, the officer was operating more on a hunch or suspicion, not reasonably articulated facts.[21] Corporal DeMato's hunch turned out to be correct, but we cannot

---

[17]8 A.3d 1169 (Del. 2010).

[18]2011 WL 5319900 (Del. Oct. 31, 2011).

[19]2013 WL 4858986 (Del. Sept. 10, 2013).

[20]*Stafford, supra.*

[21]*Miliany-Ojeda, supra.*

judge actions by subsequent results.

Here, Defendant complied with Corporal DeMato's requests including giving his reason for being where he was, and exiting the vehicle. Defendant lied about his name and birth date but Corporal DeMato did not know that and made no effort to check prior to the detention.[22]

I also specifically asked if any of Corporal DeMato's actions were taken to insure his and the other officer's safety. The State conceded they were not.

One final issue. The State's fall back position is that the drugs found in the field would have been inevitably discovered. The facts of this case make such an analysis speculative and virtually impossible. If the officer had not handcuffed Defendant, would he have run, would the drugs ended up in the field, would the operator of the car admitted to possession of drugs? The answers are myriad and unknowable.

What we do know is that the detention of Defendant was based upon no hard facts and thus not reasonable. As a result I am granting the Motion to Suppress as to the drugs found in the field only. That is all Defendant asked and all I am going to suppress. All other evidence is fair game at trial.

I appreciate both counsel's professional and civil presentation.

**IT IS SO ORDERED**

Very truly yours,

Craig A. Karsnitz

CAK/lml
cc: Prothonotary

---

[22]As in for example, *Stafford v. State, supra.*