**STATE of Delaware**

v.

**James RICKARDS.**

**No. ID 1002005670.**

Superior Court of Delaware, Sussex County.

Submitted: July 12, 2010.

Decided: July 13, 2010.

---

79. *McGuire v. McCollum,* 116 A.2d 897, 901 (Del.Super.1955).

Mark Cutrona, Esquire, Deputy Attorney General, Department of Justice, Georgetown, Delaware, attorney for the State.

Dean C. Johnson, Esquire, Georgetown, Delaware, attorney for the Defendant.

## *OPINION*

STOKES, J.

■ Defendant James L. Rickards is charged with Driving Under the Influence ("DUI") in violation of Title 21 *Del. C.*

§ 4177(a). Defendant has moved to suppress the evidence against him on grounds that the arresting officer's reason for pulling him over was pretextual, thereby violating his rights under Article I, § 6 of the Delaware Constitution. The Court has carefully considered Defendant's Motion to Suppress and the State's Response, as well as the transcript of the suppression hearing. On a motion to suppress, the State bears the burden of establishing that the challenged search or seizure comported with the rights guaranteed by the federal Constitution, the Delaware Constitution or Delaware statutory law.[1]

The record shows the following facts. On January 18, 2010, Captain Rodney Layfield of the Delaware State Police was driving home to his residence on Bethesda Road in Georgetown, Delaware. As he turned onto Bethesda Road, Captain Layfield saw an automobile stopped in the road in front of his private driveway. The vehicle was at a standstill in the oncoming lane of the two-lane road. As Layfield approached in his unmarked car, the vehicle slowly pulled away. The driver masked his face with his elbow or shoulder. Layfield pulled into his driveway and then backed out and followed the vehicle. He pulled up behind the vehicle at a stop sign and activated his talon light, a bright red and blue light that sits on the dashboard. The vehicle pulled over to the shoulder and stopped. Layfield got out of his car, approached the driver of the vehicle and asked for his identification and papers. Defendant James Rickards, the driver, was the sole occupant of the vehicle. He turned over his paperwork to Captain Layfield, and the two men had a brief conversation. Captain Layfield detected an odor of alcohol coming from Defendant and asked him to exit the car.

1. *Hunter v. State,* 783 A.2d 558 (Del.2001).

Defendant was then asked to perform some field sobriety tests, which he failed. Defendant was charged with DUI.

■ Defendant argues that the stop of his vehicle was pretextual and that Captain Layfield did not have an independent, reasonable and articulable suspicion to stop him. For this reason, Defendant argues that the evidence leading to his arrest for DUI should be suppressed under *State v. Heath*[2] and Article I, § 6 of the Delaware Constitution of 1897.[3] To preserve such an issue, the defendant must discuss and analyze any of the following possible criteria: "textual language, legislative history, preexisting state law, structural differences, matters of particular state interest or local concern, state traditions and public attitudes."[4] Rickards has reviewed applicable case law and urges the Court to adopt the *Heath* test.

The first question is whether the stop was pretextual. Captain Layfield testified that he stopped the vehicle because it was standing still in a travel lane in front of his private driveway, which is a traffic violation. He also suspected that the occupant of the vehicle may have been littering on or near his property. There had been numerous recent incidents of littering on or near his property, and Layfield thought perhaps it was occurring again.

■ A pretextual stop consists of an ostensible reason for the stop, such as a traffic violation, and an underlying reason for the stop, such as a suspicion that evidence of some other criminal activity may be found if the car is stopped. As stated by a New York Supreme Court, "[a] pretext stop has generally been defined as a police officer's use of a traffic infraction as a subterfuge to stop a motor vehicle in order to investigate the driver or occupant about an unrelated matter."[5]

In this case, Captain Layfield stopped the vehicle on a hunch that there may have been littering and because the vehicle was at a standstill in a travel lane in front of his driveway. In Layfield's words:

> [T]his vehicle was completely stopped in a travel lane. In addition to being completely stopped in a travel lane, it blocked my private driveway. In addition to that, specifically in this area, the circumstances that I've had, and my neighbors have also, of people dumping trash; and obviously suspicious activity in this area caused my great concern in my profession; and because of the vehicle stopped at the end of my driveway....[6]

These were not ostensible or pretextual reasons, but the only reasons for the stop.

**2.** 929 A.2d 390 (Del.Super.Ct.2006).

**3.** Defendant argues that in *Jones v. State*, 745 A.2d 856 (Del.1999), our Supreme Court determined that Art. I, § 6 of the Delaware Constitution provides greater protection to citizens than does the Fourth Amendment. The *Jones* court held that the federal constitution would allow a police officer lacking reasonable suspicion for an investigatory stop to create suspicion through an unjustified, attempted detention. Rickards' case presents a different situation. There is nothing in *Jones* to suggest that a police officer lacks reasonable, articulable suspicion for an investigatory stop if he has observed the violation of a traffic ordinance.

**4.** *Jenkins v. State*, 970 A.2d 154, 158 (Del.2009)(citing *Wallace v. State*, 956 A.2d 630, 637–38 (Del.2008)).

**5.** *People v. Adames*, 2009 WL 5868581 (N.Y.App.Div.). *See also People v. Robinson*, 271 A.D.2d 17, 711 N.Y.S.2d 384 (N.Y.App. Div.2000) (holding that police officer's subjective reason for stopping an automobile is irrelevant in ascertaining probable cause as long as the stop is reasonable).

**6.** Transcript of Suppression Hearing (May 12, 2010) at 11–12.

Captain Layfield had no underlying intent or desire to investigate other criminal activity. Based on his testimony, which the Court finds to be credible, Captain Layfield did not make a pretextual stop.

The Court notes that under *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the legality of a search or seizure under the Fourth Amendment is to be measured by the objective circumstances, and not by the subjective motivation of the officer.[7] That is, the actual or ulterior motives of an officer do not invalidate police action that is justifiable on the basis that a violation of law has occurred. If the stop is supported by reasonable articulable suspicion that a motor vehicle violation occurred, any pretext that an officer may have is irrelevant.

However, under the Delaware Constitution, the issue is not as clear. The Delaware Supreme Court has not had the right opportunity to address this question under the Delaware Constitution, and the judges of the Superior Court have reached contrary conclusions when addressing it.

In *State v. Karg*,[8] this Court reversed a decision of the Court of Common Pleas granting a defendant's motion to suppress evidence obtained after an allegedly pretextual traffic stop. In so doing, this Court applied traditional Fourth Amendment analysis as clarified in *Whren*. *Karg* held that in Delaware the constitutional reasonableness of a traffic stop does not depend on the officer's subjective motive.[9] *Karg* also observed that the general rule in Delaware is that the stop of an automobile, although a seizure under the Fourth Amendment, is reasonable where the police have probable cause to believe that a traffic violation has occurred.[10] This is traditional Fourth Amendment analysis.

In *State v. Heath*,[11] this Court was confronted with the issue of pretextual stops and found that the protection offered by Article I section 6 of the Delaware Constitution is greater than the protection afforded by the Fourth Amendment as set forth in *Whren v. United States*.[12] The *Heath* court stated that its "concern is with those traffic stops demonstrated to have been made exclusively for the purpose of investigating an officer's hunch about some other purpose."[13]

---

**7.** In *People v. Robinson*, 97 N.Y.2d 341, 741 N.Y.S.2d 147, 767 N.E.2d 638 (2001), New York's highest court adopted the *Whren* analysis and also held that a traffic stop by a police officer who has probable cause to believe a motorist has committed a traffic infraction does not violate the New York State Constitution, even if the officer's primary motivation is to conduct another investigation. *Robinson* noted that as of December 2001, more than 40 states, including Delaware in *State v. Karg*, 2001 WL 660014 (Del.Super.), had adopted the objective standard approved by *Whren* or cited it with approval. *Robinson* at 151, 767 N.E.2d 638. Few states have rejected the *Whren* formulation. *See State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526, 528 (2000), rev'd 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001)(holding that an arrest supported by probable cause and following a traffic stop did not violate the Fourth Amendment because of police officer's subjective motivation

to search vehicle for evidence of crime); *State v. Ladson*, 138 Wash.2d 343, 979 P.2d 833 (1999); *State v. Ochoa*, 146 N.M. 32, 206 P.3d 143 (App.2008)(holding that where there is a factual finding of pretext, that is, that the officer had a constitutionally invalid purpose for the stop which is not exempt from the warrant requirement, the stop violates New Mexico Constitution).

**8.** 2001 WL 660014 (Del.Super.).

**9.** *Id.* at *2.

**10.** *Id.* at *3.

**11.** 929 A.2d 390 (Del.Super.Ct.2006).

**12.** 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**13.** *Heath*, at 402.

The *Heath* court set forth a three-part, burden-shifting test to determine the validity of a pretextual stop under the Delaware Constitution. Under *Heath,* the State must first show that there was probable cause or reasonable suspicion of a traffic violation such that a reasonable officer could have made the stop. If the court finds that there was not probable cause or reasonable suspicion, the analysis ends because the stop was unreasonable regardless of any underlying motivation. If there was probable cause or reasonable suspicion for the stop, the burden shifts to the defendant to show that an unrelated purpose motivated the stop and that absent such a purpose the stop would not have been made. If this burden is met, pretextualism is presumed, and the State then has the opportunity in rebuttal to demonstrate that a non-pretextual rationale existed for the stop. This showing entails consideration of the officer's subjective intent as well as objective factors relating to reasonable suspicion of an underlying criminal offense.[14]

This Court notes that *Heath* found broader protection under the state constitution than under the federal constitution in somewhat conclusory fashion. The *Heath* Court noted its concern about the danger of arbitrary traffic stops arising from the extensive traffic code.[15] However, *Heath* does not explain how or why the protection afforded by the state Constitution differs from that under the federal Constitution. The United States Supreme Court has indicated that such conclusions are best made by reliance on additional legal sources. In *Cruzan v. Director, Mo. Dep't of Health,* the Court stated that "[s]tate courts have available to them for decision a number of sources—state constitutions, statutes, and common law—which are not available to us."[16]

In *State v. Darling,*[17] this Court rejected the *Heath* test in favor of traditional Fourth Amendment analysis. *Darling* offered two reasons for declining to apply the *Heath* test. The first reason was the difficult judicial burden of examining the subjective motivations of an investigating officer. Second, adoption of the *Heath* test could make it difficult for police officers to stop individuals for traffic violations if those stops occurred in high crime areas or involved other factors that could give the appearance of a pretextual stop.

In James Rickards' case, the Court need not consider the appropriateness of the *Heath* test because the record is clear that the stop was not pretextual, that is, Captain Layfield had no hidden intention of investigating an underlying crime.

 Under the Fourth Amendment, a traffic stop is reasonable if it is supported by reasonable suspicion or probable cause to believe that a traffic violation has occurred.[18] The standard remains the same regardless of the subjective intent of the officer at the time of the stop.[19] The constitutional reasonableness of the traffic stop does not depend on the actual motivations of the individual officer involved, because subjective intentions play no role in ordinary probable cause analysis under the Fourth Amendment.[20] Therefore, as long

14. *Id.* at 403.

15. *Id.* at 398.

16. 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).

17. 2007 WL 1784185 (Del.Super.).

18. *State v. McDannell,* 2006 WL 1579818, at *2 (Del.Super.) (citing *Whren v. United States,* 517 U.S. at 810, 116 S.Ct. 1769).

19. *Id.*

20. *State v. Minaya,* 1997 WL 855705 (Del.Super.).

as the officer is making the traffic stop based on a violation of the traffic code that he has observed, any pretextual reason or actual motivations that might also be involved in the officer's actions are irrelevant.[21]

Layfield testified that Defendant's vehicle was stopped in the roadway in front of his house and partially blocked his driveway. This is a traffic violation pursuant to 21 *Del. C.* § 4179(a) and (e):

(a) Upon any highway outside of a . . . residential district, no person shall stop . . . any vehicle. . . .

(e) No person shall stop . . . a vehicle . . . (2) in front of a public or private driveway.

Having observed the vehicle violating a traffic ordinance, Captain Layfield had statutory authority to stop the vehicle, pursuant to 21 *Del. C.* § 802:

Any police officer is authorized to make an administrative stop for purposes of enforcing a civil traffic statute, upon a reasonable and articulable suspicion that

a violation of such statute has occurred.[22]

Thus, Captain Layfield was authorized to stop Rickards for a civil traffic violation, which he observed as it happened.[23] Our Supreme Court has stated that the "determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts." [24] Under this standard, Captain Layfield had reasonable, articulable suspicion to stop Rickards when he saw his vehicle stopped in the road in violation of 21 *Del. C.* § 4179.

At the hearing, the defense argued that Captain Layfield had no authority to stop Defendant's vehicle because there was no violation when Layfield pulled Rickards over at the stop sign. However, the final clause of section 802 is phrased in the past tense, that is, the stop may be made after the violation "has occurred." Under this language, the stop need not be made while

---

**21.** *McDannell*, 2006 WL 1579818 at *2 (citing *Whren*, 517 U.S. at 812, 116 S.Ct. 1769).

**22.** Likewise, a police officer is vested with authority to make a stop to investigate a crime pursuant to 11 *Del. C.* § 1902 (2007).
 Defendant's argument that Captain Layfield was authorized only to issue a summons is unavailing. While 21 *Del. C.* § 4181(a) gives peace officers the discretion to issue a summons for an unattended vehicle, this subsection is not relevant to the facts at bar, where Rickards' vehicle was not unattended. Instead, § 4181(b) authorizes the Department of Public Safety to adopt a schedule of civil penalties for **all** violations of Subchapter X. Stopping, Standing and Parking.
 Similarly, § 4179(b) gives peace officers the discretion to move a vehicle but does not require such action and is not the sole remedy for a civil traffic violation. *See* § 4181(b) (authorizing civil penalties for traffic violations under Subchapter X).

**23.** For purposes of Fourth Amendment analysis, a stop for the infraction of a civil traffic ordinance does not differ from a stop for criminal activity. In *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the Court noted that where police officers are required to act upon traffic violations that they observe, their observations will provide "the quantum of individualized suspicion" that is necessary to ensure the police discretion is sufficiently constrained. In Delaware, "[v]iolation of traffic laws constitutes reasonable suspicion." *Caldwell v. State*, 780 A.2d 1037, 1046 (Del.2001). In other states as well, a police officer may stop a vehicle for a violation of a civil traffic regulation. *See, e.g., State v. Faken*, 223 Wis.2d 803, 589 N.W.2d 457 (Wis.Ct.App.1998); *People v. Williams*, 2009 WL 2426301 (Mich.App.2009).

**24.** *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).

the violation is taking place. Otherwise, police authority would be eviscerated. For example, if a police officer observed a car speeding down a highway, the officer could not stop the car if it slowed down upon seeing the police car or for any other reason. In this case, Captain Layfield observed a vehicle at a standstill in the travel lane of a road blocking at least in part his driveway. The fact that the vehicle slowly drove away as Layfield approached does not change the fact that he saw that a traffic violation had occurred. This conclusion is consistent with *Terry v. Ohio,* which states that a police officer whose observations lead him reasonably to suspect that a person "has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke that suspicion." [25]

At the hearing, Captain Layfield stated that he saw the car at a standstill in the oncoming lane in front of his house, and he therefore had a reasonable, articulable suspicion that a traffic violation took place. Thus, he had statutory authority to make the stop, and the stop met the requirements of the Fourth Amendment as explained under *Terry v. Ohio*[26], *Whren v. United States*[27], and *Jones v. State.*[28]

For these reasons, Defendant's motion to suppress is **DENIED.**

**IT IS SO ORDERED.**

---

25. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

26. *Id.*

27. 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

28. 745 A.2d 856 (Del.1999).