# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                        )
       v.                )
                        )     I.D. No. 2403011193
WILSON VASQUEZ-LOPEZ,      )
                        )
      Defendant.      )

Submitted:  October 24, 2024
Decided:  November 21, 2024

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Defendant's Motion to Suppress*

**GRANTED**

April Kalicharan, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State*.

Michael Abram, Esquire, Abram and Hutchison, Georgetown, Delaware, *Attorney for Defendant*.

**Primos, J.**

Defendant Wilson Vasquez-Lopez has filed a motion to suppress alleging that police lacked reasonable articulable suspicion to conduct a traffic stop and that all evidence seized as a result should be suppressed. For the reasons that follow, Defendant's motion is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

At approximately 10:34 p.m. on March 21, 2024, Trooper Nathaniel Valenti caught up to Defendant's GMC pickup truck, which was heading southbound on Route 13 in Kent County.[2] Defendant's vehicle was in the rightmost of the two southbound lanes, while a civilian SUV was pacing him in the left lane, alternately hugging and crossing the leftmost fog line. Shortly after Trooper Valenti pulled up behind Defendant's pickup, Defendant wandered partially out of lane: the left edge of Defendant's left rear tire briefly crossed the leftmost edge of the lane line, before Defendant immediately corrected back into his own lane. At the same time, the civilian SUV, both left tires on the shoulder, abruptly accelerated past Defendant's pickup. Just as the SUV pulled alongside, Defendant's righthand tires briefly crossed the right fog line before he again corrected. Trooper Valenti activated his emergency lights to initiate the traffic stop approximately 15 seconds later. Less than one minute elapsed between Trooper Valenti's spotting Defendant's vehicle

---

[1] The facts are taken from the suppression hearing held on October 24, 2024. At the hearing, the State presented the testimony of Trooper Valenti and introduced the recording of the traffic stop as an exhibit. Defendant called no witnesses. Citations in the form of "(D.I. __)" refer to docket items.

[2] Trooper Valenti also testified that he had observed Defendant's vehicle earlier in the evening, considerably north of where the traffic stop was ultimately made, and that a video recording was made of those observations. Counsel for the State represented to the Court that she was not previously aware of that video footage, but that because no traffic stop was made at the time of the initial observation, the footage was irrelevant. Defense counsel argued that because he was unable to cross-examine Trooper Valenti regarding the missing video footage, the Court should give no weight to his earlier observations. The Court ruled, without objection from the State, that it would not consider Trooper Valenti's initial observations in determining whether there was a basis for the traffic stop.

and the activation of his lights.

Justifying the stop, Trooper Valenti cited 21 *Del. C.* § 4155(b), which requires drivers to signal before changing lanes, and 21 *Del. C.* § 4122(1), which prohibits drivers from moving from a lane before "first ascertain[ing] that such movement can be made with safety."[3] On September 24, 2024, Defendant filed the instant motion, arguing that Defendant was not required to signal a lane change before briefly touching the lane line,[4] and that minimally crossing the lane or fog lines was not a violation of 21 *Del. C.* § 4122(1) where that action did not threaten a traffic collision or the safety of pedestrians.[5] In its response, the State argued that Defendant twice "deviated from his lane of travel without first ascertaining whether it was safe," and that, as a result, "the operator already in the left lane was forced to drive over the fog line . . . to avoid Defendant's erratic and unsafe movement into their [sic] lane of travel," which was not accompanied by a signal.[6]

## DISCUSSION

On a motion to suppress evidence from a warrantless seizure, the defendant bears the initial burden of establishing that the seizure violated his rights under the United States Constitution, the Delaware Constitution, or the Delaware Code.[7] "If the defendant establishes a basis for the motion, the State must then prove, by a preponderance of the evidence, that the actions of its agents were in accordance with constitutional protections."[8] Here, the State must prove that the traffic stop was reasonable under the circumstances—i.e., that it was supported by reasonable articulable suspicion of criminality, such as reasonable articulable suspicion that a

---

[3] Mot. to Suppress at ¶ 1 (D.I. 16).
[4] *Id.* at ¶ 8.
[5] *Id.* at ¶¶ 9–13.
[6] State's Resp. to Def.'s Mot. to Suppress at 6 (D.I. 17).
[7] *State v. Nyala*, 2014 WL 3565989, at *5 (Del. Super. July 17, 2014) (citing *State v. Dollard*, 788 A.2d 1283, 1286 (Del. Super. 2001)).
[8] *Id.* (citing *State v. Babb*, 2012 WL 2152080, at *2 (Del. Super. June 13, 2012)).

traffic violation had occurred.[9] In determining whether reasonable articulable suspicion existed, the Court considers "the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[10] "A 'reasonable suspicion' exists when the officer can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'"[11]

## I. TROOPER VALENTI LACKED REASONABLE ARTICULABLE SUSPICION THAT DEFENDANT HAD VIOLATED 21 *DEL. C.* § 4122(1).

21 *Del. C.* § 4122(1) provides that "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Under this statute, this Court has repeatedly found reasonable articulable suspicion lacking where a defendant's deviation from his lane is minimal, is quickly corrected, and does not create an appreciable danger. In *State v. Seaton*, for example, the Court granted a motion to suppress where the defendant drifted less than a foot over the broken dividing line between traffic lanes and corrected within two seconds, and no cars were nearby.[12] The Court reasoned that crossing the line was not, in and of itself, sufficient to justify a stop where "Defendant did not create or narrowly avoid any danger."[13] In *State v. Clay*, similarly, the Court held that "an act of briefly drifting across the [double-yellow] centerline which is immediately corrected, in and

---

[9] *State v. Rickards*, 2 A.3d 147, 152 (Del. Super. 2010); *see also Caldwell v. State*, 780 A.2d 7037, 1045–46 (Del. 2001) ("Under the Fourth Amendment, a traffic stop is a seizure of a vehicle and its occupants by the state . . . . [T]he stop must be justified at its inception by reasonable suspicion of criminal activity[.]"

[10] *Rickards*, 2 A.3d at 152 (quoting *Jones v. State*, 745 A.3d 856, 861 (Del. 1999)).

[11] *State v. Skinner*, 2023 WL 2194537, at *2 (Del. Super. Feb. 10, 2023) (quoting *Juliano v. State*, 254 A.3d 369, 388 (Del. 2020)).

[12] 2018 WL 656380, at *3–5 (Del. Super. Jan. 30, 2018).

[13] *Id.* at *4.

4

of itself, is [not] a violation" of Section 4122(1), and does not create a reasonable suspicion that a driver is under the influence.[14]

The Court finds the above cases persuasive. Defendant intruded minimally on the left lane, as the left-most edge of his tire only slightly crossed the left-most edge of the lane line—much less than the "foot" referenced in *Seaton*. As in both *Seaton* and *Clay*, Defendant immediately corrected his steering, and no appreciable danger resulted from this minimal diversion. The State's argument that the civilian SUV was forced to take evasive action by crossing the left fog line is misplaced: (1) Defendant did not cross so far over the line that the SUV would have been at risk of collision, had it remained fully in its lane; and (2) Defendant had fully corrected back into his lane before the SUV unpredictably accelerated, from several car lengths behind, to pass him on the shoulder. Because Defendant's deviation from his lane was minimal and not unsafe, it did not violate the applicable statute, and therefore could not form a basis for reasonable articulable suspicion.[15]

The State, as noted *supra*, has argued that in this case the movement of Defendant's vehicle posed a safety threat because it forced another vehicle to perform evasive action. However, the State has not proven by a preponderance of the evidence that Defendant's minimal movement created any danger or, at a more fundamental level, that it even represented a "move[ment] from such lane." Moreover, the State's argument that the driver of the civilian SUV "was forced to drive over the fog line to the left to avoid Defendant's erratic and unsafe movement

---

[14] 2002 WL 1162300, at *2 (Del. Super. May 28, 2002) (denying defendant's motion on other grounds).

[15] *Cf. McDonald v. State*, 947 A.2d 1073, 1078–79 (Del. 2008), *overruled on other grounds by Gordon v. State*, 245 A.3d 499 (Del. 2021) (Defendant's failure to use a turn signal when exiting private property could not form basis for stop because police officer was mistaken that the signal was required by statute); *but see State v. Moore*, 2017 WL 1040709, at *4 (Del. Super. Mar. 16, 2017) (distinguishing *McDonald* where defendant's window tint, which formed basis for stop, was not "unambiguously" legal).

5

into their lane of travel" is nothing more than speculation and fails to satisfy the "more likely than not" standard imposed upon the State.

## II. TROOPER VALENTI LACKED REASONABLE ARTICULABLE SUSPICION THAT DEFENDANT HAD VIOLATED 21 *DEL. C.* § 4155(b).

21 *Del. C.* § 4155(b) provides that "[a] signal of intention to turn or move right or left when required shall be given continuously during not less than the last 300 feet or more than $^1/_2$ mile traveled by the vehicle before turning." Under 21 *Del. C.* § 4155(d), this provision is also applicable when a driver must "indicate an intention to . . . change lanes[.]"

Here, there is no indication that Defendant changed lanes, for the reasons stated previously, i.e., his deviation was minimal. Nor is there any indication that Defendant "intended" to change lanes in this case. There was no slow-moving vehicle in front of Defendant that would motivate a pass, for example. There is also no evidence that Defendant intended to make a left turn shortly thereafter, as would necessitate a lane change. The Court is aware of no case concluding that a defendant violated the statute under similar facts. Indeed, all decisions applying it appear to have involved a defendant actually changing lanes or turning without timely signaling.[16]

Since there is no evidence that Defendant either changed lanes or intended to change lanes, as would require him to activate his turn signal, the State has failed to show that Trooper Valenti held a reasonable articulable suspicion that Defendant had violated 21 *Del. C.* § 4155(b).

---

[16] *See, e.g.*, *Milner v. State*, 314 A.3d 687, 2024 WL 853694, at *1 (Del. Feb. 28, 2024) (signaling too close to intersection and changing lane without signaling); *Juliano*, 254 A.3d at 384 (signaling too close to intersection); *State v. Madrey*, 2020 WL 901490, at *1 (Del. Super. Feb. 25, 2020) (exiting without signaling); *United States v. Felix*, 2024 WL 1908914, at *3 (D. Del. May 1, 2024) (changing lanes before signaling).

6

## CONCLUSION

In sum, it appears to the Court that Trooper Valenti made a traffic stop without a reasonable articulable suspicion that Defendant had violated either statute. The stop was therefore illegal.

For these reasons, Defendant Wilson Vasquez-Lopez's Motion to Suppress is **GRANTED**.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls
*Via Email*
oc: Prothonotary
cc: Counsel of Record

7