**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 2206012279 |
| | ) | |
| | ) | |
| MARQUES D. LIVELY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted:  January 16, 2025
Decided:  April 16, 2025

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT
DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF
SHOULD BE DENIED
AND
POSTCONVICTION COUNSELS' MOTION TO WITHDRAW
SHOULD BE GRANTED**

Beth D. Savitz, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Kimberly A. Price, Esquire and Patrick A. Collins, Esquire, Collins Price & Warner, Attorneys for Defendant Marques D. Lively.

SALOMONE, Commissioner

This 16th day of April, upon consideration of the Motion for Postconviction Relief filed by Defendant Marques D. Lively ("Defendant" or "Lively");[1] the Motion to Withdraw filed by postconviction counsel and the Memorandum in support thereof;[2] the Affidavit of defense counsel;[3] the State's Response to Defendant's Motion for Postconviction Relief;[4] and the record in this matter, the following is my Report and Recommendation.

## FACTS AND PROCEDURAL HISTORY

On June 23, 2022, an officer of the Newport Police Department pulled over a silver Mercury Grand Marquis being driven by Lively for numerous traffic offenses, including, speeding, operating a vehicle with noncompliant aftermarket window tint, and failing to wear a seatbelt.[5] At the time of the traffic stop, Lively was accompanied by another individual, Khalil Mu-min ("Mu-min"), who was sitting in the right front passenger seat of the vehicle.[6]

Once the vehicle had pulled over, the Newport police officer initiated contact with its occupants and requested that Lively provide his driver's license, vehicle

---

[1] Docket Item 27. For purposes of this Report and Recommendation, all docket item references relate to Superior Court Criminal Docket, *State v. Lively*, Case No. 2206012279 (hereinafter, "D.I. __").
[2] D.I. 38-40.
[3] D.I. 44.
[4] D.I. 49.
[5] D.I. 1.
[6] *Id.*

registration and proof of insurance.[7]  In response to the request, Lively removed his wallet from a small camouflaged-style book bag and produced his driver's license and registration as well as an expired insurance card.[8]  He advised the officer that his insurance had lapsed.[9]  During this interaction, the officer detected the odor of marijuana emanating from the interior of the vehicle.[10]

The officer then briefly returned to his patrol car and requested that an additional unit respond for assistance.[11] An officer from the Delaware State Police arrived a short time thereafter.[12]  Both Lively and Mu-min were removed from the vehicle, handcuffed and secured in the patrol cars.[13]  At the same time, the officers ascertained that neither individual possessed a medical marijuana card.[14]

The police then conducted an inventory search of the vehicle.[15] The camouflage bag was initially located on the right rear floorboard of the car, but was moved to the rear seat of the car by one of the officers prior to being searched.[16] Upon reviewing the contents of the bag, the Newport police officer discovered Lively's wallet and a completely concealed Glock semi-automatic handgun in a

---

[7] *Id.*
[8] *Id.*
[9] *Id.* Mu-min also produced his Delaware identification card.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

black plastic holster with a live round of ammunition in the chamber and six live rounds of ammunition in the magazine.[17] In the center console area of the vehicle, the officer also found three marijuana blunts with burnt ends, indicating they had been smoked.[18] A second Glock magazine, loaded with six live 9mm rounds, was located in a small pocket in front of the driver's seat.[19] Both men were read their *Miranda* rights on the scene.[20]

Lively and Mu-min were transported to the Newport Police Department for processing.[21] Lively voluntarily admitted that the handgun belonged to him and that he had purchased it about a year ago.[22] He also acknowledged having previously fired the handgun at a shooting range.[23] Lively had three prior felony convictions in the State of Delaware, rendering him a person prohibited from possessing firearms and ammunition.[24]

On August 15, 2022, a grand jury indicted Lively on the following charges: (i) Possession of a Firearm by a Person Prohibited ("PFBPP"); (ii) Carrying a Concealed Deadly Weapon ("CCDW"); (iii) Failure to Have Minimum Insurance; (iv) No Proof of Insurance; (v) Operating a Vehicle with Noncompliant Window

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] D.I. 1, 49.

Tinting; (vi) Failure to Wear a Seatbelt; (vii) Unreasonable Speed and (viii) Possession of Marijuana (a civil violation).[25] Defendant's final case review was scheduled for March 27, 2023.[26] When he failed to appear, the Court issued a capias for his arrest.[27] Defendant was extradited to Delaware from Arizona, where he had fled, and was held in default of bail.[28]

On November 28, 2023, Defendant plead guilty to PFBPP and traveling at an Unreasonable Speed.[29] As part of the plea agreement, the parties agreed to recommend the 10-year minimum mandatory Level V sentence for PFBPP and a fine for speeding. The plea agreement also reflected that Defendant acknowledged he was eligible to be declared an habitual offender, but the State would not seek habitual offender status if he accepted the plea offer.[30] The Court accepted the parties joint recommendation and sentenced Lively the same day to 15 years at Level V, suspended after the non-habitual minimum mandatory sentence of ten years at Level 5 for the PFBPP, followed by decreasing levels of supervision, and a $50.00 fine on the speeding charge.[31] Lively did not file a direct appeal from his conviction or sentence.

---

[25] D.I. 5, Indictment.
[26] D.I. 13. Defendant had previously posted bail in the amount of $30,500.00 on July 22, 2022. D.I. 2.
[27] D.I. 16.
[28] D.I. 18.
[29] D.I. 23, 24. *See* Plea Agreement.
[30] *Id.*
[31] D.I. 26, 49. *See* Sentence Order.

On December 18, 2023, Lively filed a *pro se* Motion for Postconviction Relief and a Motion for Appointment of Counsel.[32] Defendant was appointed postconviction counsel on May 3, 2024.[33] On August 8, 2024, after finding no meritorious postconviction claims, postconviction counsel filed a Motion to Withdraw and a Memorandum in support thereof.[34] Lively failed to respond to postconviction counsel's Motion to Withdraw within the 30 days provided by Superior Court Rule 61(e)(7).[35] He did, however, send a letter to postconviction counsel on September 17, 2024, indicating the letter was his response to the Motion to Withdraw.[36] Defense counsel filed an affidavit on November 15, 2024 responding to the allegations of ineffective assistance of counsel.[37] Thereafter, the State filed its Response to the Motion for Postconviction Relief.[38] The deadline for Defendant to file a reply was January 16, 2025, if he desired to do so. Defendant elected not to file a reply. The matter is now ripe for decision.

### DEFENDENT'S CLAIMS FOR POSTCONVICTION RELIEF

In his *pro se* Motion for Postconviction relief, Lively raises multiple issues that can be fairly categorized into three general claims. First, he asserts that he did

---

[32] D.I. 27, 28.
[33] D.I. 32.
[34] D.I. 39, 40.
[35] D.I. 41. *See* Super. Ct. Crim. R. 61(e)(7).
[36] D.I. 42. Lively did not provide any substantive response to the Motion to Withdraw in his letter. Rather, he merely thanked counsel for their efforts on his behalf. *Id.*
[37] D.I. 44.
[38] D.I. 49.

not give the police permission to search his vehicle or book bag nor did the police have a valid search warrant for the vehicle.[39]  Second, he alleges that the traffic stop was illegal.[40]  And, finally, he claims that he was coerced into signing the plea agreement because of the threat of being declared a habitual offender if he rejected the plea offer.[41]  For the reasons discussed below, each of these claims are without merit.

## APPLICABLE LAW GOVERNING POSTCONVICTION RELIEF

**Rule 61 and Procedural Bars to Relief**

Superior Court Criminal Rule 61 ("Rule 61") governs the procedures by which an incarcerated individual may seek to have his conviction set aside on the ground that the court lacked jurisdiction or any other ground that is a sufficient factual and legal basis for a collateral attack upon the conviction.[42]  That is, it is a means by which the court may correct Constitutional infirmities in a conviction or

---

[39] D.I. 27.

[40] *Id.*

[41] *Id.*  While Lively does not directly assert ineffective assistance of counsel in connection with his claims of an improper search and seizure and traffic stop, the Court is of the view that a fair reading of his *pro se* Motion for Postconviction is that Lively is asserting that defense counsel was ineffective for failing to file a motion to suppress in connection with the foregoing.  Similarly, he appears to be claiming that his defense counsel coerced him into accepting the plea offer by stating that it was the typical practice of the deputy attorney general to seek habitual offender status when a plea offer is rejected.

[42] Super. Ct. Crim. R. 61(a)(1).

sentence.[43] "Rule 61 is intended to correct errors in the trial process, not allow defendants unlimited opportunities to relitigate their convictions."[44]

Given that intent, before considering the merits of any claims for postconviction relief, the Court must first determine whether there are any procedural bars to the postconviction motion.[45] Rule 61(i) establishes four procedural bars to postconviction relief.[46] Rule 61(i)(1) prohibits the Court from considering a motion for postconviction relief unless it is filed within one year after the judgment of conviction is final.[47] Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[48]

Rule 61(i)(3) provides that "any ground for relief not asserted in the proceedings leading to the judgment of conviction" is barred, unless the movant shows (a) cause for relief from the procedural default, and (b) prejudice from violation of the movant's rights.[49] Rule 61(i)(4) provides that "any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment

---

[43] *Harris v. State*, 410 A.2d 500 (Del. 1970).
[44] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[45] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[46] Super. Ct. Crim. R. 61(i)(1)-(4).
[47] Super. Ct. Crim. R. 61(i)(1).
[48] Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "pled with particularity" that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).
[49] Super. Ct. Crim. R. 61(i)(3).

of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[50] However, ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented in a motion for postconviction relief.[51] Lastly, the aforementioned bars to relief do not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of Rule 61(d)(2)(i)-(ii).[52]

This is Defendant's first Motion for Postconviction Relief and it was timely filed on December 18, 2023, before his conviction even became final.[53] As such, his Motion is not procedurally barred by Rule 61(i)(1) or (2). Nor are his claims procedurally defaulted under Rule 61(i)(3) or Rule 61(i)(4) since his ineffective assistance of counsel claims could not be raised at any earlier stage in the proceedings.[54]

---

[50] Super. Ct. Crim. R. 61(i)(4).
[51] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. May 28, 2021); *Green v. State*, 238 A.3d 160, 187-188 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).
[52] Super. Ct. Crim. R. 61(i)(5). Defendant does not assert that this Court lacks jurisdiction or a claim that would satisfy Rule 61(d)(2)(i) or (ii).
[53] D.I. 26, 27. Super. Ct. Crim. R. 61(m)(1) provides that if a defendant does not file a direct appeal, a judgment of conviction is final for purposes of Rule 61 thirty (30) days after the Court imposes sentence. As such, judgment became final in this case on December 28, 2023.
[54] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

**Ineffective Assistance of Counsel Claims under *Strickland***

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*.[55] This test requires that a defendant demonstrate that (a) his counsel's performance was deficient and (b) that said deficiency prejudiced him.[56]

To establish a deficient performance, a defendant must show by a preponderance of the evidence that his attorney's performance "fell below an objective standard of reasonableness" under prevailing professional norms.[57] That is, that he was not reasonably competent.[58] Judicial scrutiny under the first prong is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[59] To establish prejudice, a defendant must show there exists a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceedings would have been different.[60]

When evaluating claims of ineffective assistance of counsel, there is a strong presumption that counsel's conduct fell within a wide range of reasonable

---

[55] *Strickland v. Washington,* 466 U.S. 668 (1984).
[56] *Id.* at 687-88, 694.
[57] *Id.* at 688.
[58] *Id.* at 687-88, 694.
[59] *Id.* at 689.
[60] *Id.* at 694.

professional assistance and constituted sound strategy.[61] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[62] In evaluating counsel's performance, the Court must "reconstruct the circumstances of counsel's challenged conduct," and "evaluate the conduct from counsel's perspective at the time."[63]

In the context of a guilty plea, to establish prejudice under *Strickland*, the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[64] A defendant's statements during a plea colloquy are presumed to be truthful,[65] and a defendant "is bound by all the representations...made during [the] plea colloquy" absent clear and convincing evidence that the statements were not made knowingly, voluntarily, and intelligently.[66] Moreover, "a voluntary guilty plea waives a defendant's right to challenge any errors or defects before the plea, even those of constitutional dimension."[67]

---

[61] *Strickland*, 466 U.S. at 689; *Gattis v. State*, 697 A.2d 1174, 1184 (Del. 1997).
[62] *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003); *Gattis*, 697 A.2d at 1178-79.
[63] *Strickland*, 466 U.S. at 689.
[64] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[65] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[66] *Hammons v. State*, 2005 WL 2414271, at *1 (Del. Sept. 28, 2005).
[67] *Smith v. State*, 2004 WL 120530, at *1 (Del. Jan. 15, 2004). *See also Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) ("[A] guilty plea constitutes a waiver of a trial on the charges and a waiver of the constitutional rights to which he or she would have been entitled to exercise at a trial."); *Rodriguez v. State*, 2003 WL 1857547, at *1 (Del. Apr. 7, 2003) (stating that a defendant's guilty plea "eliminates his claim relating to events that occurred before the entry of the plea[.]").

For the reasons set forth below, all the claims raised in the Motion for Postconviction Relief were waived upon the entry of Defendant's guilty plea.

### Lively's Claims Were Waived Upon the Entry of His Guilty Plea

As previously noted, a defendant is bound by his answers on the guilty plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[68] In the subject action, the Plea Agreement, plea colloquy, and Truth-in-Sentencing Guilty Plea Form indicate that Lively knowingly, voluntarily, and intelligently entered a guilty plea.

During the guilty plea colloquy, Defendant testified that (i) he reviewed and signed each of the Plea Agreement, Immediate Sentencing Form, and the Truth-in-Sentencing Guilty Plea, (ii) he discussed the contents of the foregoing documents with his attorney and had any questions regarding those documents addressed by his counsel, and (iii) he had not been threatened or forced to plead guilty.[69] Lively further stated that he was satisfied with his attorney's representation and understood the Constitutional rights he was giving up by entering the plea and admitted his guilt to the two charges comprising the Plea Agreement.[70] The Court thereafter found Lively's plea to be knowing, intelligent and voluntary.[71]

---

[68] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).

[69] *See* D.I. 40, Appendix to Memorandum in Support of Motion to Withdraw at A53-A70, Sentencing Transcript, dated November 28, 2023 (hereinafter, "Sentencing Transcript at __").

[70] Sentencing Transcript at A61-A65.

[71] Sentencing Transcript at A65-A66.

12

Lively has not presented any clear, contrary evidence to call into question his testimony at the plea colloquy or answers on the Truth-in-Sentencing Guilty Plea Form. Accordingly, his valid guilty plea waived his right to challenge any alleged errors, deficiencies or defects occurring prior to the entry of his plea, even those of constitutional proportions.[72] Although the query could conclude at this point, the Court will, nonetheless, address Lively's individual claims of ineffective assistance of counsel on a substantive basis.

**Ground One: Lack of Search Warrant and/or Consent to Search Vehicle and its Contents**

Defendant asserts that he did not consent to the search of his vehicle or his book bag, nor did the police obtain a search warrant.[73] The logical inference the Court must draw from those assertions is that Defendant is of the belief that (i) the search of the vehicle and his book bag was illegal and the evidence found as a result of said search should have been suppressed and (ii) defense counsel, in turn, was ineffective for failing to file a motion to suppress. Contrary to Lively's position,

---

[72] *Smith v. State,* 841 A.2d 308 (TABLE), 2004 WL 120530, at *1 (Del. Jan. 15, 2004); *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State,* 2009 WL 2426675 (Del. 2009); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004).

[73] D.I. 27. In further support of his assertion of an illegal search, Defendant contends that the police "used marijuana as probable cause to bypass my consent and search my car." As this Court noted in *State v. Brown*, while "the odor of marijuana alone is insufficient to establish probable cause to arrest a vehicle's occupant. . . marijuana may provide reasonable suspicion to extend a stop." See *State v. Brown*, 287 A.3d 1222, 1232 (Del. Super. 2023).

however, there was no basis to file a motion to suppress the evidence as the doctrine of "inevitable discovery" applied to his case.

The inevitable discovery doctrine is an exception to the exclusionary rule which "provides that evidence, obtained in the course of illegal police conduct, will not be suppressed if the prosecution can prove that the incriminating evidence 'would have been discovered through legitimate means in the absence of official misconduct.'"[74] Here, Lively's vehicle was not insured at the time of the police stop.[75] Because it was not insured, standard police procedure required that the vehicle be towed from the scene and subjected to an inventory search.[76] The firearm located in the camouflage book bag would have been discovered during that inventory search.

Defense counsel addressed this issue with Lively in a letter, dated September 20, 2023, in which he explained that "the police would eventually tow the car because it had no insurance so it could not be driven on the road and they are obligated to do an 'inventory search' and the gun firearm would have been discovered then."[77] Given that there was no basis to file a motion to suppress,

---

[74] *Hardin v. State*, 844 A.2d 982, 987 (Del. 2004) (quoting *Cook v. State*, 374 A.2d 264, 267-68 (Del. 1977)).

[75] D.I. 1.

[76] D.I. 49.

[77] D.I. 40, Appendix to Memorandum in Support of Motion to Withdraw at A91-92 (hereinafter referred to as the "September 20, 2023 Letter").

defense counsel's failure to do so cannot constitute deficient performance under *Strickland*.

**Ground Two: Illegal Stop of the Vehicle**

In his second claim, Lively asserts that the police stopped his vehicle illegally, alleging that "the cop followed me and harassed me for blocks until he turned on [his] lights."[78] As with his first claim, the implication of Lively's second claim is that (i) the traffic stop was pretextual and in violation of his right to be free from unreasonable searches and seizures under the Fourth Amendment of the U.S. Constitution and Article I, §6 of the Delaware Constitution, (ii) all evidence seized as a result of the traffic stop should have been suppressed, and (iii) defense counsel was deficient for failing to file a motion to suppress. This claim, however, is also without merit because the traffic stop at issue was reasonable.

"A traffic stop is reasonable if it is supported by reasonable suspicion or probable cause to believe that a traffic violation has occurred."[79] "Both the United States Supreme Court and the Delaware Supreme Court have rejected the argument that 'pretextual' stops are unreasonable seizures, so long as the objective facts support the officer's conclusion that reasonable suspicion existed to investigate even

---

[78] D.I. 27.
[79] *State v. Rickards*, 2 A.3d 147, 151 (Del. Super. 2010) (citing *State v. McDannell,* 2006 WL 1579818, at *2 (Del. Super.).

15

a minor traffic offense."[80] According to the affidavit of probable cause, the police officer observed Lively speeding and driving a vehicle with aftermarket tinted windows without a valid waiver.[81] In addition, Lively was seen not wearing a seatbelt.[82] These traffic violations provided the police with reasonable suspicion and valid bases for the traffic stop.[83] Given that the traffic stop was reasonable, defense counsel had no legal basis to file a motion to suppress. Thus, his failure to do so cannot be considered deficient performance.

**Ground Three: Coerced Plea Agreement**

In his third claim for relief, Defendant argues that he was coerced by defense counsel into signing the plea agreement because he was threatened with being declared a habitual offender if he rejected the plea offer from the State.[84] Specifically, Lively references the September 20, 2023 Letter from defense counsel which states as follows:

> Although DAG Savitz has not put it in the plea agreement, it is usually her practice to seek habitual offender sentencing if the plea offer is rejected. If this happens, you would be facing 15 years minimum/mandatory to Life on the Possession of a Fire Arm By a Person Prohibited

---

[80] *State v. Brown*, 287 A.3d 1222, 1231(Del. Super. 2023) (citations omitted).

[81] D.I. 1.

[82] *Id.*

[83] *Juliano v. State*, 254 A.3d 369, 387 (Del. 2020) (finding there is "nothing unreasonable in a motor vehicle stop based on a police officer's reasonable suspicion that the operator or occupant of the vehicle has committed or is committing a violation of the law, which includes our traffic laws.").

[84] D.I. 27.

16

charge, 8 to life on Carrying a Concealed Deadly Weapon.[85]

While not specifically cited by Defendant in his Motion for Postconviction Relief, defense counsel also wrote another letter to Lively, dated October 28, 2022, regarding his habitual offender status.[86] In that letter, defense counsel similarly explained that the prosecutor believed that Lively was habitual offender eligible and faced a minimum mandatory sentence of 15 years to life on the charge of PFBBP and 8 years to life on the charge of CCDW due to his prior violent felonies.[87]

Lively's contention that defense counsel coerced him into taking the plea based on the statements set forth in the foregoing letters is unavailing. The statements by defense counsel regarding (i) the likelihood of the State seeking habitual offender status if he did not accept the plea offer and proceeded to trial and (ii) the minimum mandatory time he was facing if convicted and declared a habitual offender merely reflected Defendant's circumstances.[88] Accordingly, such

---

[85] The September 20, 2023 Letter from defense counsel was attached as an exhibit to Lively's *pro se* Motion for Postconviction Relief.

[86] D.I. 40, Appendix to Memorandum in Support of Motion to Withdraw at A90.

[87] *Id.*

[88] Postconviction counsel notes that trial counsel incorrectly advised Lively regarding his potential habitual offender status. According to postconviction counsel, defense counsel's letters indicate that he believed Lively was eligible to be declared an habitual offender under 11 *Del. C.* § 4214(c), which provides that an individual that has been two times convicted of a felony and one time convicted of a Title 11 violent felony and who thereafter is convicted of a subsequent Title 11 violent felony "shall receive a minimum sentence of the statutory maximum penalty . . . up to life imprisonment." 11 *Del. C.* § 4214(c). Lively's prior convictions, however, include two Possession with Intent to Deliver a Non-Narcotic Schedule I Controlled Substance, Drug Dealing Plus an Aggravating Factor, and Possession of Ammunition by a Person Prohibited ("PABPP"). The two drug offenses are Title 16 violent felonies, but PABPP is a non-violent felony. Thus, prior to the

17

statements cannot be reasonably construed as tantamount to coercion. As this Court has held, it is entirely appropriate for defense counsel to explain the potential consequences of rejecting a plea offer to a defendant, including possible sentences he might face if unsuccessful at trial.[89]

Moreover, as previously discussed, Lively did not complain of coercion during his plea colloquy.[90] Instead, he expressly denied that anybody had threatened or forced him into pleading guilty.[91] Lively also confirmed that he was satisfied with his counsel's representation and was fully advised of his rights.[92]

In addition, Lively has failed to establish how he was prejudiced by the plea deal or otherwise demonstrated a reasonable probability that the outcome would have been more beneficial to him had he rejected the plea offer. Defendant was sentenced to the ten-year minimum mandatory Level V sentence for PFBPP and a

---

case at hand, Lively did not have any Title 11 violent felony convictions and was not eligible to be declared an habitual offender under 11 *Del. C.* § 4214(c). He was, however, eligible to be declared a habitual offender under 11 *Del. C.* § 4214(b), which provides that when a person has three prior felony convictions and is subsequently convicted of a Title 11 violent felony, his sentence shall be half of the statutory maximum penalty up to life imprisonment. 11 *Del. C.* § 4214(b). If declared an habitual offender under 11 *Del. C.* § 4214(b), Lively faced 10 years minimum mandatory up to life imprisonment for PFBPP and four years up to life imprisonment for CCDW. After consultation with Defendant, postconviction counsel determined not to pursue this potential postconviction claim on Lively's behalf. Postconviction counsel also notes that Defendant's minimum mandatory sentence is 10 years pursuant to 11 *Del. C.* § 1448(e)(1)(c), which states that a person's minimum mandatory sentence is 10 years if previously convicted of any two violent felonies.

[89] *Skyes v. State*, 2012 1413958, at *5.
[90] Sentencing Transcript at A60.
[91] *Id.*
[92] *Id.* at A63.

fine for speeding. The remainder of the charges were *nolle prossed*. Had Lively rejected the plea offer, the alternative of going to trial would have likely produced a much less favorable result for him as the probability of him being convicted for both PFBPP and CCDW was exceedingly high. As defense counsel noted in his September 23, 2023 Letter, the evidence of Defendant's guilt with respect to both felonies was substantial.[93] It included post-*Miranda* statements made by Lively where he admitted the firearm belonged to him, leaving Lively little by way of a defense if he were to elect to go to trial.[94]

Based on the weight of evidence against Lively and the potential sentences he was facing if convicted of both felonies, it was objectively reasonable for defense counsel to conclude that taking a plea was the most prudent defense strategy in this case. "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options' that decision is 'virtually unchallengeable' . . ."[95] In view of the totality of the circumstances, defense counsel's representation of Lively was effective in securing a plea deal which inured to his benefit. Defendant has failed to show how going to trial would have resulted in him receiving a lesser sentence. Nor has he shown that there was a reasonable probability that he would

---

[93] *See* September 23, 2023 Letter.
[94] *Id.*
[95] *Ploof v. State*, 75 A.3d 840, 852 (Del. Super. 2013) (citing *Strickland v. Washington,* 466 U.S. 668, 690-91 (1984).

not have taken the plea but would have insisted on going to trial when considering all the facts and circumstances. In light of the foregoing, the Court finds Defendant's third claim of ineffective assistance of counsel regarding coercion to be without merit.

## **CONCLUSION**

For all the foregoing reasons, this Court concludes that the claims set forth in Lively's *pro se* Motion for Postconviction Relief are without merit. Defendant's claim that the firearm should have been suppressed because the search and seizure of his vehicle and book bag were illegal is without merit because the firearm would have been discovered during a routine inventory search of his vehicle, making such evidence subject to the inevitable discovery rule. Defendant's claim that the traffic stop was illegal is likewise without merit because the officer observed Lively commit multiple traffic violations prior to the stop, giving him reasonable suspicion and probable cause to stop the car. Neither ground provided a basis for defense counsel to file a motion to suppress the firearm. Therefore, his performance could not be deficient under *Strickland* for failing to do so. And finally, Lively's claim of being coerced by defense counsel into accepting the plea offer has no basis in fact. The statements made by defense counsel regarding his habitual offender status reflected Defendant's circumstances and no more. Moreover, Defendant's acceptance of the plea was a rationale choice given the alternatives.

Accordingly, Defendant's Postconviction Motion should be **DENIED** and postconviction counsels' Motion to Withdraw should be **GRANTED.**

**IT IS SO RECOMMENDED.**


/s/ Janine M. Salomone
The Honorable Janine M. Salomone


oc:   Prothonotary
cc:   Beth A. Savitz, Esquire, Deputy Attorney General
      Kimberly A. Price, Esquire, Postconviction counsel
      Timothy Weiler, Esquire, Office of Defense Services
      Marques Lively, Howard R. Young Correctional Institute (SBI #00645409)